UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

NATHANIEL BRUNDIDGE,

                        Plaintiff,

                                                CASE # 12-CV-6157-FPG

v.

                                                DECISION & ORDER

XEROX CORPORATION,

                        Defendant.

_____

      Plaintiff Nathaniel Brundidge[1] is suing his former employer, Xerox Corporation ("Xerox"), claiming that he was terminated in retaliation for complaining to management about race discrimination. Xerox has moved to dismiss the complaint, arguing that Plaintiff's Complaint is insufficient as a matter of law. Because Plaintiff has not alleged facts that would demonstrate a plausible connection between his complaints to management and his later termination, the Motion is granted.

BACKGROUND

      The following facts are drawn from Plaintiff's Complaint[2]. Plaintiff, an African American male, was an employee in Xerox's maintenance department from 1988 until his termination in March 2009. Comp. ¶¶ 6, 8, 58. The facts that gave rise to the Complaint began in 2008, when two white male Xerox employees "aggressively cornered" Plaintiff into an office.

_____

[1] At the time the Complaint was filed and the Motion to Dismiss was briefed, Plaintiff was represented by Attorney Christina Agola. After this motion was fully briefed, Agola was suspended from the practice of law by the Appellate Division of the New York State Supreme Court, Fourth Department, the United States District Court for the Western District of New York, and the United States Court of Appeals for the Second Circuit. However, that suspension does not have any effect on the present motion, as the Court finds oral argument unnecessary.

[2] Dkt. #1, which will be cited to as "Comp." in this Decision.

Comp. ¶ 11.  The employees asked Plaintiff, "why are you in here?" before accusing him of "snooping around," calling him "lazy," and saying he had "no right to be in here."  Comp. ¶¶ 12-13.  Plaintiff reported the incident to his supervisor and expressed his belief that the employees' actions were racially motivated.  Comp. ¶ 14.  The supervisor later notified Plaintiff that the employees accused Plaintiff of throwing a mop and bucket at them, and that he would not take further action on Plaintiff's behalf.  Comp. ¶ 15.  Plaintiff also wrote a letter on June 15, 2008 to Xerox's Administrative Office, asserting that he believed his coworkers *and* supervisors were harassing him based on his race and trying to have him fired.  Comp. ¶ 16.  Plaintiff also hand-delivered this letter to Kim Shrout (whose job position is not given in the Complaint).  Comp. ¶ 16.  Xerox did not take any remedial action.  Comp. ¶ 17.

The incident that ultimately led to Plaintiff's termination occurred about eight months later on February 23, 2009.  Comp. ¶ 18.  Plaintiff finished cleaning "Building 111" around 1:00 p.m., and started walking to "Building 208."  Comp. ¶ 19.  On the walk over, Plaintiff began a conversation with Wendy Stramonine "as he had done many times before."  Comp. ¶ 20.  Plaintiff made a joke during the conversation saying it was his birthday.  Comp. ¶ 21.  Plaintiff and Wendy then hugged briefly, "as they had done before," and parted around 1:30 p.m.  Comp. ¶ 22.

Around 3:30 p.m that same day, Plaintiff was told by a union representative that he needed to meet with Plaintiff in his office.  Comp. ¶ 23.  Present at the meeting were other union representatives, Stramomine, and Charles Goldsby, director of Human Resources.  Comp. ¶ 24.  Goldsby began the meeting by accusing Plaintiff of "touching Wendy inappropriately" hours earlier.  Comp. ¶ 26.  Goldsby elaborated by saying that Stramomine accused Plaintiff of grabbing and squeezing her so tightly that her breasts came out of her bra and her shirt became

disheveled.  Comp. ¶ 28.  Plaintiff denied these accusations, and now believes they were made in retaliation for the letter Plaintiff previously wrote to Xerox's Administration Office.  Comp. ¶¶ 27, 29, 30.

While at the meeting, Goldsby asked Plaintiff to step outside the office and speak with him privately.    Comp. ¶ 31.    During this private conversation, Plaintiff again denied Stramomine's accusations, and alleges that the following conversation took place:  Goldsby asked Plaintiff, "Why would she say that? We all make mistakes but we have to own up to them."  Comp. ¶ 32-33.  Goldsby then told Plaintiff that if he "owned up to the mistake," he would "not have to go through the process."  Comp. ¶ 33.  Plaintiff  interpreted this to mean he would not be in trouble if he admitted he made a mistake, so he asked Goldsby, "You mean if I say that I did this and that I made a mistake we would not have to go through with suspension with intent to fire?"  Comp. ¶ 34-35.  Goldsby responded, "We won't."  Comp. ¶ 35.

Before  going  back  into  his  office,  Goldsby  told  Plaintiff  that  Stramomine  was  not pursuing the harassment accusation herself.  Comp. ¶ 36.  Rather Gene Lagoner, Stramomine's supervisor, was pursuing it.  Comp. ¶ 36.  The Complaint then states "as a side bar" that Lagoner is "associated" with Plaintiff's supervisor "who was the subject of his prior complaints."  Comp. ¶ 36.  The nature of the association between Lagoner and Plaintiff's supervisor is not discussed in  the  Complaint.   Goldsby  then  instructed  Plaintiff  to  go  back  in  the  meeting  apologize  to Stramomine.  Comp. ¶ 36.

Plaintiff  alleges  that  when  he  went  back  in  the  room,  Goldsby  abruptly  said  that Stramomine accused Plaintiff of stalking her.  Comp. ¶ 39.  Stramomine denied that she made this accusation.  Comp. ¶ 40.  Plaintiff then apologized to Stramomine and said he did not mean to touch her inappropriately.  At that point, Goldsby allegedly contradicted what he privately said

to Plaintiff, and announced that he planned to suspend Plaintiff with an intent to fire him.  Comp. ¶ 43.

Plaintiff was later suspended, and subsequently filed a grievance with Xerox.  Comp. ¶ 44.  On February 27, 2009, Plaintiff met with the Xerox Board of Ethics to seek reinstatement of his job.  Comp. ¶ 45.  Goldsby and two union representatives were present at the meeting. Comp. ¶ 47.  Goldsby repeated Stramomine's accusation that Plaintiff touched her inappropriately, and Plaintiff again denied the accusation.  Comp. ¶¶ 47, 49.  Goldsby ended the meeting by telling Plaintiff that his reinstatement application was denied pending further investigation.  Comp. ¶ 50.

Around March 2009, Plaintiff attended another meeting with one union representative, and the Vice President and President of Xerox.  Comp. ¶ 52.  Plaintiff was asked during the meeting whether Stramonine "ask[ed] him to back off or anything like that" during their interaction.  Comp. ¶ 53.  Plaintiff replied that Stramomine did not ask him to back off, and again denied that he had touched her inappropriately.  Comp. ¶¶ 53-55.  On March 25, 2009, about two weeks after this final meeting, Xerox terminated Plaintiff for sexual harassment. Comp. ¶ 58.

## DISCUSSION

In ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court "must accept as true all of the factual allegations contained in the complaint," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007), and "draw all reasonable inferences in Plaintiff's favor." *Faber v. Metropolitan Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).  At the same time, the court is not required to accord "[l]egal conclusions, deductions, or opinions couched as factual allegations ... a presumption of truthfulness." *In re NYSE Specialists Sec. Litig.*, 503 F.3d

89, 95 (2d Cir. 2007) (quotation marks omitted).   To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570.   A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).   Plausibility "is not akin to a probability requirement," rather, plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quotation marks omitted).   "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quotation marks and citation omitted).   A pleading that consists of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombley*, 550 U.S. at 555.   Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557.

Retaliation claims are ultimately analyzed under the burden-shifting rules of *McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973).   However, at the pleading stage, "the survival of a complaint…does not rest on whether it contains specific facts establishing a *prima facie* case under *McDonnell Douglas.*" *Lax v. 29 Woodmere Blvd. Owners, Inc.*, 812 F. Supp. 2d 228, 236 (E.D.N.Y. 2011), citing *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002) ("[t]he *prima facie* case under *McDonnell Douglas* ... is an evidentiary standard, not a pleading requirement"). As such, the Court does not specifically apply the *McDonnell Douglas* burden-shifting test to determine whether Plaintiff has stated a retaliation claim, but rather generally assesses the plausibility of Plaintiff's claim based on the facts alleged in the Complaint.

In order to state a retaliation claim, a plaintiff must allege that: (1) he engaged in a protected activity; (2) the employer was aware of this activity; (3) the employer took an adverse employment action against him; and (4) a causal connection exists between the alleged adverse action and the protected activity. *Papelino v. Albany College of Pharmacy of Union University*, 633 F.3d 81, 91 (2d Cir. 2011).

In this case, there does not appear to be any dispute regarding the first three elements. Rather, Defendant argues that Plaintiff's Complaint fails to provide any factual basis to support even an inference that a causal connection exists between Plaintiff's complaint on June 15, 2008 and his termination on February 23, 2009. I agree.

In this Circuit, a plaintiff can indirectly establish a causal connection to support a discrimination or retaliation claim by "showing that the protected activity was closely followed in time by the adverse [employment] action." *Reed v. A.W. Lawrence & Co., Inc.*, 95 F.3d 1170, 1178 (2d Cir. 1996) (citation and quotation marks omitted) (twelve days between protected activity and discharge could suggest a causal relationship). The Supreme Court has further held that "when a plaintiff is relying solely on temporal proximity, the protected activity and an adverse employment action must occur 'very close' to each other." *Clark County School Dist. v. Breeden*, 532 U.S. 268, 273 (2001). While neither the Supreme Court nor the Second Circuit has established a bright-line rule to define 'very close,' "district courts within the Second Circuit have consistently held that the passage of two to three months between the protected activity and the adverse employment action does not allow for an inference of causation." *Murray v. Visiting Nurse Servs. of N.Y.*, 528 F. Supp. 2d 257, 275 (S.D.N.Y. 2007) (collecting cases).

In this case, the time period between the protected activity and Plaintiff's termination – slightly more than eight months – is far too distant to create an inference of causation or causal

connection.  Plaintiff has cited no cases to suggest that an eight month period of time between the protected activity and alleged retaliatory conduct could create a causal connection, and on these facts, Plaintiff's allegations do not plausibly plead a causal connection based upon temporal proximity.  Indeed, when Plaintiff responded to the Motion to Dismiss, he seemingly ignored Defendant's argument regarding the time period involved as a basis for causation.

While Plaintiff could establish the required causal connection by alleging specific facts (rather than by relying on the temporal proximity of the challenged events), Plaintiff has failed to introduce any direct evidence of a causal connection between his protected activity and his subsequent termination.

The best Plaintiff offers is an unsupported statement that consists of pure conjecture.  In the Complaint, Plaintiff alleges that "as a side bar" the individual who was pursuing his termination, Gene Lagoner, "is associated with Plaintiff's supervisor who was the subject of his prior complaints."  The Complaint does not explain how Lagoner – an individual who is not Plaintiff's supervisor and is only mentioned "as a side bar" in the Complaint – is actually associated with Plaintiff, which is a critical detail.  To simply say that someone is "associated with" an individual stops well short of stating a plausible claim for relief, and this vague and conclusory statement, devoid of any factual enhancement, is exactly what the Supreme Court has determined to be insufficient.  *Iqbal*, 556 U.S. at 678. ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement.") (citations and quotations omitted).

CONCLUSION

Because Plaintiff has not plausibly alleged any causal connection between the alleged adverse action and the protected activity he engaged in, Defendant's Motion to Dismiss the Complaint (Dkt. #7) is GRANTED, and this case is dismissed, with prejudice.  The Clerk is directed to close this action.

IT IS SO ORDERED.

DATED:       March 31, 2014
             Rochester, New York

HON. FRANK P. GERACI, JR.
United States District Judge